UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:24-cv-62339

ZEPHYRIN VICTOR,

      Plaintiff,

vs.

AE MANAGEMENT, LLC,
a Florida Limited Liability Company

      Defendant.

_____/

## COMPLAINT

Plaintiff ZEPHYRIN VICTOR, by and through undersigned counsel, sues Defendant AE MANAGEMENT, LLC, a Florida Limited Liability Company, and alleges as follows:

1.      This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff ZEPHYRIN VICTOR is a resident of Broward County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is, and at all relevant times, has been blind and visually disabled in that

1

Plaintiff suffers from retinopathy, which is a permanent eye and medical condition that substantially and significantly impairs his vision and limits his ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.      Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually

impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8.      Defendant is a Florida Limited Liability Company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of 8 U.S. based restaurants that offer a luxurious dining experience, combining traditional Italian cuisine with modern twists and high-quality ingredients, including the location Plaintiff intended to patronize in the near future (and as early as December 2024 and/or early January 2025), which is located at 1201 N. Federal Highway Fort Lauderdale, FL 33304.

9.      Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

10.     Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11.     At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls 3 U.S. based restaurants under the name "Casa D'Angelo". Each "Casa D'Angelo" is open to the public. As the owner, operator, and/or controller of these locations, Defendant is defined as a place of "public accommodation" within the meaning of the ADA per 42 U.S.C §12181 and 28 C.F.R. §36.104.)

12.     Because Defendant is a location open to the public, each of Defendant's physical locations is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13.     Defendant also owns, controls, maintains, and/or operates an adjunct website,

https://www.casa-d-angelo.com/ (the "Website"). One of the functions of the Website is to provide the public with information on the locations and hours of operation of Defendant's physical locations. In addition, the Website allows users to explore exclusive dining offers and culinary services, browse the restaurant's diverse menu offerings, including handcrafted pastas, fresh seafood, premium meat cuts, and seasonal specials, as well as see the wine list of any location and analyze the prices, make reservations for dining at any of the restaurant locations, arrange private events, and reserve private dining rooms, view a gallery of photos with the founders of the restaurant alongside various celebrities, read articles from different magazines highlighting the restaurant's achievements, purchase electronic and physical gift cards for use online and at the physical locations, check gift card balances, and view the order status of the gift cards, apply for job positions through the "Careers" section, explore the restaurant's history, learn about Chef Angelo Elia's background, and discover the restaurant team on the About page, view contact information for local restaurants, including phone numbers and email addresses, view privacy policies and other legal information, and sign up for the email newsletter to receive exclusive offers, benefits, invitations, and updates.

14.     The Website also services Defendant's physical locations by providing information on available menu items, promotions and events, their food philosophy, and other information that Defendant is interested in communicating to its customers.

15.     Because the Website allows the public the ability to secure information about the locations of Defendant's physical locations and hours of operation, explore exclusive offers of dining and culinary services, browse the restaurant's diverse menu offerings, including handcrafted pastas, fresh seafood, premium meat cuts, and seasonal specials, as well as see the wine list of any location and analyze the prices, make reservations for dining at any of the restaurant locations, arrange private events, and reserve private dining rooms, view a gallery of photos with the founders

4

of the restaurant alongside various celebrities, read articles from different magazines highlighting the restaurant's achievements, purchase electronic and physical gift cards for use online and at the physical locations, check gift card balances, and view the order status of the gift cards, apply for job positions through the "Careers" section, explore the restaurant's history, learn about Chef Angelo Elia's background, and discover the restaurant team on the About page, view contact information for local restaurants through the "Contact Us" section, including phone numbers and email addresses, view privacy policies and other legal information, and sign up for the email newsletter to receive exclusive offers, benefits, invitations, and updates, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical locations, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendant's physical locations in that, it acts as a critical point for making reservations and engaging with the Defendant's offerings that are also available for booking in, from, and through its physical locations.

16.    Because the public can explore exclusive offers of dining and culinary services, browse the restaurant's diverse menu offerings, including handcrafted pastas, fresh seafood, premium meat cuts, and seasonal specials, as well as see the wine list of any location and analyze the prices, make reservations for dining at any of the restaurant locations, arrange private events, and reserve private dining rooms, view a gallery of photos with the founders of the restaurant alongside various celebrities, read articles from different magazines highlighting the restaurant's achievements, purchase electronic and physical gift cards for use online and at the physical

locations, check gift card balances, and view the order status of the gift cards, apply for job positions through the "Careers" section, explore the restaurant's history, learn about Chef Angelo Elia's background, and discover the restaurant team in the "About" section, view contact information for local restaurants on the Contact Us page, including phone numbers and email addresses, view privacy policies and other legal information, and sign up for the email newsletter to receive exclusive offers, benefits, invitations, and updates, the Website is an extension of, and gateway to the physical locations, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical locations.

17.     At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

18.     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as December 2024 and/or early January 2025), Defendant's physical location located at 1201 N. Federal Highway Fort Lauderdale, FL 33304, and to search for brick-and-mortar locations that

are in closest proximity to Plaintiff, check hours of operation, explore exclusive offers of dining and culinary services, browse the restaurant's menu offerings, as well as see the wine list of any location and analyze the prices, make reservations for dining at any of the restaurant locations, view a gallery of photos with the founders of the restaurant alongside various celebrities and read articles from different magazines highlighting the restaurant's achievements, purchase gift cards for use online and at the physical locations, check gift card balances, explore the restaurant's history, learn about Chef Angelo Elia's background, and discover the restaurant team, view contact information for local restaurants, including phone numbers and email addresses, view privacy policies and other legal information, and sign up for the email newsletter to receive exclusive offers, benefits, invitations, and updates. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early as December 2024 and/or early January 2025) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19.     The opportunity to explore exclusive offers of dining and culinary services, browse the restaurant's diverse menu offerings, including handcrafted pastas, fresh seafood, premium meat cuts, and seasonal specials, as well as see the wine list of any location and analyze the prices, make reservations for dining at any of the restaurant locations, arrange private events, and reserve private dining rooms, view a gallery of photos with the founders of the restaurant alongside various celebrities, read articles from different magazines highlighting the restaurant's achievements, purchase electronic and physical gift cards for use online and at the physical locations, check gift card balances, and view the order status of the gift cards, apply for job positions through the "Careers" section, explore the restaurant's history, learn about Chef Angelo Elia's background, and discover the restaurant team on the About page, view contact information for local restaurants on the Contact Us page, including phone numbers and email addresses, view privacy policies and other legal information, and sign up for the email newsletter to receive exclusive offers, benefits,

7

invitations, and updates from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits and to compare menus, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

21.     Beginning in March 2024, Plaintiff attempted on several occasions to utilize the Website to explore the restaurant's offerings, including its menu, special promotions, and discounts, to educate himself about the available dining services, learn about the locations and hours of operation, search for nearby restaurant locations, and check the menu pricing with the intent to make a reservation or purchase gift cards, either through the Website or in, from, and through the physical locations. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

22.     On or about March 26, 2024, the Plaintiff, interested in exploring new dining options of authentic traditional cuisines, used JAWS screen-reader to find a local restaurant offering fresh, high-quality Italian dishes in an elegant, welcoming atmosphere. Among the search results, he discovered Defendant`s website and decided restaurant's diverse and refined menu offerings. However, during the booking process, Plaintiff encountered several accessibility issues on the website. The primary issue was the inability to select a reservation date due to a malfunctioning date picker window, which failed to focus properly. Additionally, the website

lacked a functional "Skip to Content" link, which forced the Plaintiff to navigate through the entire navigation menu instead of directly accessing the main content. These issues ultimately prevented the Plaintiff from completing the reservation process and experiencing the refined dining offered at Casa D'Angelo.

23.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a.  "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

b. Landmarks were not properly implemented on the home page. The Plaintiff attempted to bypass the navigation menus but could not access the 'main' and 'content info' regions of the page due to the missing landmarks;

c.  The Plaintiff encountered a navigation bar with a list that appeared visually as a list but was not properly announced. As a result, the Plaintiff was unable to recognize how many items he needed to navigate through;

d.  Several links had ambiguous texts that were unclear to the Plaintiff. The lack of a detailed description of the link's target and destination page made it difficult for the Plaintiff to perceive the purpose of the link, such as the 'Purchase' and 'Inquire' links;

e.  Plaintiff tried to follow "Purchase" link from the website and received no prior warning that the link opened a new window. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and found himself disoriented;

f.  On the home page of the web site, Plaintiff encountered long links (more than 350 characters), the messages of which were difficult to understand with the screen reader software;

g.  Social media logos was used as link without appropriate alternative text. Plaintiff was not informed about the purpose of the graphic icon;

h.  Links from the home page led to another website, and they did not indicate that they were external, such as Instagram and Facebook links. Plaintiff found himself disoriented on another website. The link text failed to warn legally blind customers

9

about the significant change of the context;

i.  Interactive element from the dinner menu of the Menu page that behaved as "button" was not programmatically written correctly. Instead of using a "role" attribute, it was built by tag <a>. As a result, the screen reader software read the incorrectly constructed element and Plaintiff was confused, because of receiving ambiguous information about the element in focus;

j.  Interactive elements, specifically the calendar used to select a reservation date, could not be focused with the Tab or Arrow keys. As a result, the Plaintiff was unaware of the additional interactive elements on the Reservation page;

k.  In an attempt to select the reservation date, the Plaintiff encountered interactive elements (buttons) that did not announce their state. The Plaintiff was not informed of what action needed to be performed, and even after interacting with an element, was unaware if the element was activated or if the desired date had been selected;

l.   After the Plaintiff selected a reservation for a table, the booking was held for only 5 minutes without notifying the Plaintiff. Additionally, there was no option to pause or extend the reservation time, nor was there any indication of the impending session timeout.

24.     Accordingly, Defendant's Website was incompatible with Plaintiff's screen reading software and keyboard.

25.     The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same online experience, with the same access to the menus, and services, as provided at the Website and in the physical locations as the non-visually disabled public.

26.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's physical store located at 1201 N. Federal Highway, Fort Lauderdale, FL 33304, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendant due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website

due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.     Because of the nexus between Defendant's physical locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical locations for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical locations, which are places of public accommodation subject to the requirements of the ADA.

28.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

30.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

33. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

36. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

38. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's services offered on the Website and in the physical locations from their homes.

39. Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical locations in contravention of the ADA.

40. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

41. The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That

mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

42.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

43.     Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

44.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

46.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

47.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

49.     Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50.     Pursuant to 42 U.S.C. §12181(7), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

51.     Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical

locations and hours of operation, explore exclusive offers of dining and culinary services, browse the restaurant's diverse menu offerings, including handcrafted pastas, fresh seafood, premium meat cuts, and seasonal specials, as well as see the wine list of any location and analyze the prices, make reservations for dining at any of the restaurant locations, arrange private events, and reserve private dining rooms, view a gallery of photos with the founders of the restaurant alongside various celebrities, read articles from different magazines highlighting the restaurant's achievements, purchase electronic and physical gift cards for use online and at the physical locations, check gift card balances, and view the order status of the gift cards, apply for job positions through the "Careers" section, explore the restaurant's history, learn about Chef Angelo Elia's background, and discover the restaurant team on the About page, view contact information for local restaurants, including phone numbers and email addresses, view privacy policies and other legal information, and sign up for the email newsletter to receive exclusive offers, benefits, invitations, and updates. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website serves to augment Defendant's physical locations by providing the public information about the locations and by educating the public as to Defendant's available services through the Website and in, from, and through the physical locations.

52.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55. Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in the physical locations in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

58. Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

59. There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines

include, but are not limited to, providing necessary navigation links, correcting inaccurate landmark structure, clarifying ambiguous link titles, notifying users of content changes in advance, ensuring keyboard access for all interactive elements, and maintaining proper focus order. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

60.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

61.     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

62.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by

public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

66.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical locations.

67.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical locations through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite

17

modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical locations and becoming informed of and purchasing Defendant's services, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical locations.

69.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal

disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months

---



[1]

thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.


DATED:  December 12, 2024.



**ALEKSANDRA KRAVETS, ESQ. P.A.**
*Counsel for Plaintiff*
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By:      */s/ Aleksandra Kravets, Esq.*
 Aleksandra Kravets, Esq.
 FBN: 120562